UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANIE CRUTCHFIELD, | ) |
|                 Plaintiff, | ) No. 25 CV 5697 |
| v. | ) Magistrate Judge Young B. Kim |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, and TRUHOME MORTGAGE SOLUTIONS, LLC, | ) |
|                 Defendants. | ) October 16, 2025 |

**MEMORANDUM OPINION and ORDER**

Plaintiff brings this lawsuit against credit reporting agencies ("CRAs") Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("TransUnion"), and her mortgage company, TruHome Mortgage Solutions, LLC ("TruHome"), seeking statutory, actual, and punitive damages for alleged "loss of credit, loss of ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial." (See generally R. 1, Compl.) Plaintiff also seeks attorney fees. Before the court is Plaintiff's motion for protective order to compel Experian and Equifax to conduct their deposition of her by video, not in person. For the following reasons, the motion is denied:

## Background

Plaintiff filed her complaint in May 2025 accusing Defendants of violating the Fair Credit Reporting Act, 15 U.S.C. § 1681 for including erroneous credit information. She secured a mortgage through TruHome in May 2022, and TruHome began reporting Plaintiff's mortgage payments to Defendant CRAs. (R. 1, Compl. ¶¶ 20-21.) The "regular" monthly payments are $1,599, due to be paid on the 1st of each month. (Id. ¶ 22.) But for the month of January 2025 Plaintiff says she paid the "full mortgage payment of $1,831.40 on January 21, 2025." (Id.)

When Plaintiff noticed alleged erroneous information in her credit report—"a late payment status for January 2025"—she complained to Defendant CRAs about this. (Id. ¶ 25.) Because Defendants failed to correct this error despite her complaint, Plaintiff says she suffered at least $80,000 in actual damages. (See R. 35, Pl.'s Mot. for Default J. against TruHome at 2 ("Plaintiff is seeking $80,000 in compensation for her actual damages.").) Notably, she does not explain in her complaint the disparity between the "regular" monthly payment of $1,599 and her "full mortgage payment of $1,831.40" for the month of January 2025, or whether her payment on January 21, 2025, was timely.

## Analysis

On October 3, 2025, Experian and Equifax served Plaintiff with a notice to take her deposition in Chicago on November 13, 2025. In response, Plaintiff proposed to appear for her deposition remotely by video. (R. 39, Pl.'s Mot. at 2.)

Experian and Equifax declined, and on October 6, 2025, Plaintiff filed the instant motion, which the CRA Defendants[1] opposed on October 10, 2025.

Pursuant to Federal Rule of Civil Procedure 30(a)(1), "[a] party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)." Rule 30(b)(4) also provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Video depositions are generally considered a valid remote means of discovery. *See Learning Res., Inc. v. Playgo Toys Enters. Ltd.,* 335 F.R.D. 536, 539 (N.D. Ill. 2020). However, given Rule 30's organization and the clear indications therein, the default rule contemplates in-person depositions. Whether a court should deviate from the default rule and allow remote depositions depends on balancing various factors, including the deponent's circumstances, the potential hardships of in-person depositions, and the availability of alternative methods such as remote depositions. Trial courts have significant discretion when balancing these factors, and decisions are necessarily fact specific. *See Neita v. City of Chi.,* 148 F.4th 916, 927 (7th Cir. 2025) (noting the Seventh Circuit has consistently held that trial courts enjoy broad discretion in ruling on discovery-related issues); *see also Learning Res.*, 335 F.R.D. at 537.

Here, Plaintiff offers only general and vague reasons for seeking to appear by video. She says that she sued Defendants in Chicago because of their location and not for "personal convenience." (R. 39, Pl.'s Mot. at 1-2.) She says she will be forced

---

[1] Although the motion for protective order only includes deposition notices Experian and Equifax served, TransUnion also seeks to depose Plaintiff in person.

to "incur significant and unnecessary travel expenses, time away from work/family, and logistical burden," thereby imposing an "undue burden" on her if required to travel to Chicago for her deposition. (Id.) She relies on *Learning Resources* to make her case that video depositions are routinely permitted, and her deposition should be no exception. (Id. at 2.) But the factors the court relied on in *Learning Resources* are very different from the vague rationale Plaintiff presents. In that case, the primary reason for requiring the deposition to proceed remotely was because of significant health risks during the COVID-19 pandemic in 2020. That is not the case here. Travelling from her home state of Florida to the forum state of Illinois to give testimony about the case she filed willingly is one of the natural consequences of filing a federal lawsuit.

There are tangible and intangible benefits to in-person depositions. The CRA Defendants rely on *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23 CV 7331, 2025 WL 1950728, at *2 (S.D.N.Y. July 16, 2025), for the proposition that "in terms of the truth-seeking function of a deposition, a remote video deposition is not a substitute for the in-person, face-to-face confrontation between adversaries." This court agrees that litigants should not underestimate the importance and significance of "in-person, face-to-face confrontation between adversaries" and the gravity of appearing in-person along with their attorneys and the court reporter assigned to administer the oath to the deponent. In-person proceedings—either at a deposition or court hearing—also reinforce the gravity of the proceeding and the oath witnesses must take.

The court recognizes many of the positive attributes of holding meetings, conferences, and proceedings by video, especially now when video platforms are more robust and reliable—even recording the proceedings and/or including GenAI features. That said, all platforms are beholden to the quality of the participants' internet service providers and the actual connection during the time the proceedings are taking place. In the event of service outages or slowdowns, remote video proceedings cannot move forward, which leads to litigants incurring unnecessary fees, costs, and delays. Here, Plaintiff does not set forth her service provider, the equipment she plans to use, or how she plans to appear remotely.

This court is also of the opinion that too many litigants and their attorneys view video conferencing as the default mode of litigating and conducting depositions. In-court and other formal proceedings can convey the level of decorum, dignity, grandeur, and solemnity they command. While this court makes every effort to accommodate attorneys' busy schedules and their clients' budgets by holding short status and motion hearings by phone or by Webex, longer proceedings are held in person for ease of control of the proceedings, making an accurate record, and ensuring the proceedings can be completed. There must be good reason why litigants and attorneys may deviate from the norm of in-person proceedings. The same is true of remote depositions.

There is no issue with requesting parties seeking to take depositions remotely if that is what they prefer. However, Rule 30(a)(1) specifically permits the requesting party to depose an individual, especially a party litigant as in this case,

5

in person if they prefer. Here, Plaintiff has offered only generalities as to why she did not sue in Chicago for her personal convenience. (See R. 39, Pl.'s Mot. at 1.) That may be true, but Plaintiff willingly decided to sue four companies in Chicago and seek more than $90,000 in damages and attorney fees—at least as of last month. Having taken the serious step of filing a federal lawsuit, Plaintiff must accept the consequences of prosecuting the same. There is nothing unduly burdensome about having to appear in the forum district to testify about one's own case at a deposition.

Finally, there are other tangible benefits to sitting down across from a deponent. First, the requesting party can be assured that it has control over the proceeding, including who and what are inside the deposition room. Second, the requesting party can be assured that the deponent is focused on the questions and answers, not distracted in front of a monitor. Third, the requesting party can be assured that the deponent is not communicating with anyone as she is being questioned. Fourth, as Defendant CRAs point out, being able to hand over a multi-page exhibit and ask questions about it allows for the deposition to proceed more efficiently, resulting in their own clients saving money on fees. (See R. 41, Defs.' Resp. at 4.) While the requesting party could email the exhibits to the deponent before or during the deposition to expedite the questioning, these options would require the requesting party to either disclose attorney's work-product before having to do so during questioning or cause other delays with the deponent having

6

to navigate to the correct pages electronically. Paper exhibits still retain ease-of-use advantages over electronic documents.

## Conclusion

For the foregoing reasons, Plaintiff's motion for protective order is denied. Plaintiff is ordered to appear in person for her deposition in Chicago on November 13, 2025.

                                                 **ENTER:**

                                                 **Young B. Kim**
                                                 **United States Magistrate Judge**